Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Eastern District of New York                                    1:19-cv-03543

| | |
|---|---|
| Christopher Derchin, Richard Feleppa, Steve Altes, Jane Doe, individually and on behalf of all others similarly situated | |
| Plaintiffs | |
| - against - | Complaint |
| Unilever United States, Inc. | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.    Unilever United States, Inc. ("defendant") manufactures, distributes, markets, labels and sells ice cream products labeled as vanilla ice cream under the Breyers brand ("Products").

2.    The Products are available to consumers nationwide from third-party retailers, including brick and mortar and online stores and directly through defendant's website, in sizes including 1 pint, 1 quart, 1.5 quart and snack cups (3 oz.).

3.    The Products include Natural Vanilla, Homemade Vanilla, Extra Creamy Vanilla

4.    Ice cream is a year-round treat enjoyed by Americans of all ages and backgrounds – 96% according to one survey.[1]

5.    Vanilla is the perennial favorite flavor, confirmed the two groups who supply ice

---

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018

cream – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

6.     The reasons for vanilla's staying power is "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats," such as the centerpiece of a hot fudge Sunday, a cold glass of root beer (float) or topping a warm slice of oven-fresh apple pie.[2]

7.     By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[3]

8.     Even one of our nation's Founding Fathers, Thomas Jefferson, appreciated vanilla and it is rumored he described it as *supra alli* – Latin for 'above others' – in the vanilla ice cream recipe discovered at his Monticello estate.[4]

9.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[5]

10.    Due to its versatility and demand, there are constant attempts to imitate vanilla, whether through synthetic vanillin made from tree bark, or harmful compounds such as coumarin.

11.    To protect consumers from being deceived by products that purport to contain vanilla but do not, standards were developed to require it be labeled correctly and conform with consumer expectations.[6]

---

[2] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[3] Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[4] Eater.com, The Reason You Love Ice Cream So Much Is Simple: Science, https://www.eater.com/ad/16388088/science-chemistry-ice-cream
[5] D. Havkin-Frenkel, et al. "A comprehensive study of composition and evaluation of vanilla extracts in US retail stores," Handbook of Vanilla Science and Technology (2019): 349-366
[6] 21 C.F.R. § 169.175-182.

12.     The Products are represented as vanilla ice creams on the labels, in point-of-sale marketing, retailers' display ads and promotion, websites, television and radio ads.

13.      Reasonable consumers expect that vanilla ice cream will have as its exclusive flavor source either vanilla extract or vanilla flavoring, that are derived from vanilla beans.

14.     The common front label representations include (1) vanilla type (i.e., Homemade), (2) 100% Grade A Milk and Cream, (2) Rainforest Alliance Certified Vanilla, (3) descriptive text and/or images related to milk and/or cream, (4) vignette of vanilla orchid or beans, (5) fresh, chilled scoop of the Product with what appear to be specks of vanilla beans and (6) statement of identity in lower right, "Ice Cream."

15.     The below table contains the front labels, ingredient lists, and the milk and cream descriptor on the front labels for the Natural, Homemade and French Vanilla Products.



INGREDIENTS: MILK, CREAM, SUGAR, VEGETABLE GUM (TARA), NATURAL FLAVOR.

Made with Fresh Cream, Sugar & Milk



INGREDIENTS: MILK, CREAM, SUGAR, CORN SYRUP, WHEY, EGG YOLKS, VEGETABLE GUMS (CAROB BEAN, TARA, GUAR), MONO AND DIGLYCERIDES, SALT, NATURAL FLAVOR, ANNATTO (FOR COLOR).

Churning Bucket for Milk and Cream



**INGREDIENTS:** MILK, CREAM, SUGAR, CORN SYRUP, EGG YOLKS, WHEY, VEGETABLE GUMS (CAROB BEAN, TARA, GUAR), MONO AND DIGLYCERIDES, NATURAL FLAVORS, ANNATTO (FOR COLOR), SALT.

Pitcher of Milk

16.     In the context of ice cream, consumers expect real vanilla derived from vanilla beans as the exclusive source of the flavor – designated as vanilla flavor or vanilla extract on the ingredient list.

17.     However, the Products' ingredients do not contain vanilla extract or vanilla flavor.

18.     Ice cream labeled as vanilla ice cream will not be expected to have any flavoring derived from sources other than vanilla beans.[7]

19.     Instead, the Products contain "natural flavor."

I.   Natural Flavor is not a Synonym for Vanilla Flavor or Vanilla Extract in the Products

20.     Vanilla extract or vanilla flavor is not identified as the sole flavoring source is because if it were, the ingredient list would indicate it.

21.     Since it is always preferable, when faced with general and specific regulations, to use the specific one, defendant's choice to not list vanilla flavor or extract is a "tell" that the "natural flavor" is not another way of identifying the specific vanilla ingredients. *Compare* 21 C.F.R. § 101.22 (natural flavor) *with* 21 C.F.R. § 169.175 (Vanilla extract.) and§ 169.177 (Vanilla flavoring.).

---

[7] 21 C.F.R. § 135.110(f)(2)(i) ("Category 1)

4

22.     Additionally, it would be illogical to use a more expensive and higher quality ingredient (vanilla-based) but designate that ingredient with a general term for flavoring perceived by consumers to cost less money (catchall "natural flavor").

## II.  The Standardized Vanilla-Vanillin Ingredients are not Labeled as Natural Flavor

23.     The vanilla standards reference three vanilla-vanillin combinations – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[8]

24.     The standardized vanilla ingredients – vanilla extract, vanilla flavoring, concentrated vanilla flavoring, and vanilla powder – could be understood as complying with the requirements for "natural flavor."[9]

25.     The "vanillin" referred to in the standardized combination ingredients is produced from non-vanilla bean materials, like wood pulp or coal tar.

26.     While vanillin is a main flavoring component of vanilla, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant.

27.     This type of "natural vanillin" is rarely produced, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

28.     For the purposes of ice cream flavor labeling, vanillin (from non-vanilla sources) cannot be designated as a "natural flavor" because it implies it derives from vanilla beans, whose flavor it simulates.[10]

29.     This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

---

[8] 21 C.F.R. § 169.180, § 169.181, § 169.182.
[9] 21 C.F.R. § 169.175 (Vanilla extract.), § 169.176 (Concentrated vanilla extract.), § 169.177 (Vanilla flavoring.), § 169.178 (Concentrated vanilla flavoring.) and § 169.179 (Vanilla powder.).
[10] 21 C.F.R. § 101.22(a)(3)

30.     This means if a vanilla flavor is derived from any source other than vanilla, it is accurately designated as an artificial flavor.[11]

31.     In a vanilla ice cream product, it is misleading to label ingredients which *simulate and reinforce and extend* vanilla as a "natural flavor" because it implies that the flavor is derived from vanilla beans, whose flavor it simulates.[12]

32.     In reality, flavors which reinforce vanilla are almost never derived from vanilla.

33.     This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

III. "Natural Flavor" Refers to Vanilla With Other Natural Flavors ("Vanilla WONF)

34.     Beneath the ingredient list on the side panel, the Products state "Natural flavor made with vanilla beans from Rainforest Alliance Certified farms."



35.     Because the "natural flavor" is "made with vanilla beans," it is clear that vanilla beans are not the exclusive source of the natural flavor.

36.     No supplier sells an ingredient called "natural flavor" – instead, the flavor purchased

---

[11] In contrast to the regulations at 21 C.F.R. § 101.22.
[12] 21 C.F.R. § 101.22(a)(3)

will mimic or reinforce whatever the intended flavor of the food is.

37.    Here, the label tells us that vanilla beans are part of the natural flavor, but not all of it – there must be other natural flavors.

38.    The designation "with other natural flavors" is intended to be used where a food contains a "characterizing flavor from the product whose flavor is simulated and other natural flavor that simulates, resembles, or reinforces the characterizing flavor."[13]

39.    It can be safely assumed that "natural flavor" in the ingredient list refers to an ingredient more specifically known in the trade as "vanilla with other natural flavors."

IV. Vanilla WONF is Misleading

40.    Listing an ingredient as Vanilla WONF on foods that are characterized by vanilla is false, deceptive and misleading because it gives the false impression that the "natural flavor" ("with other natural flavors") it provides are derived from vanilla beans.

41.    The application of "WONF" to foods characterized by (tastes like) vanilla such as vanilla ice cream, vanilla yogurt, etc.,  is deceptive and misleading because it means the product contains an insufficient amount of vanilla extract or flavor, but contains natural flavor that simulates, resembles, reinforces or extends the characterizing flavor.

42.    Even if defendant listed "natural flavor" as "Vanilla WONF," it would still be misleading to consumers who purchased vanilla ice cream, because it would give the impression that the flavor derived from the same food – vanilla.

43.    In reality, the natural flavor which simulates and reinforces and extends vanilla here likely is a form of wood pulp or coal tar derivative.

---

[13] 21 C.F.R. § 101.22(i)(1)(iii)

44. No standardized vanilla ingredients provide for "other natural flavors" to be added with a natural vanilla flavoring or extract.

45. In the context of a vanilla ice cream, WONF flavors would be designated where there is "a characterizing flavor from the product [vanilla flavor *from* vanilla] whose flavor is simulated and other natural flavor [synthetic or artificial vanillin] which simulates, resembles or reinforces the characterizing flavor."

46. The vanilla standards do not provide for the addition of "other natural flavors" to vanilla because this results in the "spiking" of vanilla "with other natural flavors," which deceives consumers as to believing that more vanilla is present than actually the case, and that all of the vanilla flavor is derived from vanilla beans.

V. Labels Represent the Products as Vanilla Ice Creams, but Careful Look Reveals They are Not

47. If the Products were vanilla ice cream with the flavor deriving entirely from vanilla beans, the front label would have the term "ice cream" proximate to "vanilla" and the difference in their size would be less than it is.[14]

48. The vanilla-type is in a font at least three times the size and in a color and stylized font so it is easily seen by the consumer.

49. Moreover, the term "ice cream" would be "accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla.'" 21 C.F.R. § 135.110(f)(2)(i).

50. Instead, "ice cream" is in the principal display panel equivalent of Elba (insert better metaphor here): boxed in on the lower right corner by the "smart label" facts, net weight and the

---

[14] 21 C.F.R. § 135.110(f)(2)(i) ("If the food contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the words "ice cream".").

Rainforest Alliance logo.

51.    Further, "ice cream's" small size (6-8 point), white color on a white background, make it almost invisible.

52.    The label is very clever because defendant, the largest ice cream producer in the country, knows the regulations very well.

53.    Defendant knows that if the front labels declared "Vanilla Ice Cream," it would draw closer scrutiny, possibly a warning from the FDA and would be blatantly out of compliance with the relevant regulations.

54.    As it is, defendant's labels must be scrutinized carefully to detect the subtleties of the misleading practices.

55.    The labels highlight the "type" of vanilla along with the multiple references to "milk and cream" ingredients – in the upper right corner ("100% Grade A Milk and Cream") and the descriptive text and images referencing milk and cream in the above table.

56.    By pairing the supposed type of vanilla (natural, French, homemade) with the main ingredients constituting ice cream, the consumer gets the impression that the Products are "vanilla ice cream."

57.    This is because they see the terms: [Vanilla (Type)] + [Ice Cream Ingredients, *viz*, milk, cream, sugar].

58.    The logical and intended connection to be drawn between the above representations is "Vanilla Ice Cream."

59.    Defendant also knows that there are no "types" of vanilla, only one label designation for vanilla ice cream, which is "vanilla."

60.    By calling attention to the vanilla "type" – Natural, French, Homemade – defendant

is declaring the flavor of the Products.

61.    However, defendant has avoided the term "flavor" anywhere on the front label.

62.    The reason why "flavor" is absent from the front labels is to make the Products appear more in the class of real vanilla ice cream – where the flavor is derived exclusively from the vanilla beans and the label does not need to say "flavor."

63.    Because the vanilla beans exclusively contribute the flavor, it is redundant and unnecessary and not in accordance with law to include the term "flavor" – "vanilla ice cream" is sufficient, and a marker to consumers of a higher quality product.

VI. Coloring and Vanilla Specks Reinforce the Deception that the Products are Vanilla Ice Cream

64.    The Natural and French Vanilla varieties contain specks – small brown dots which are shown on the scoop on the front label and in the Product.

65.    These vanilla bean specks, or seeds, are produced from previously extracted vanilla beans, and do not contribute any flavor.

66.    Their purpose is to give the impression the Products contain more, and higher quality, vanilla flavoring or extract.

67.    This conclusion will be reinforced should the reasonable consumer view the back label claim, "Natural flavor made with vanilla beans from Rainforest Alliance Certified farms."

68.    This statement fails to tell the purchaser that (1) flavor derived from vanilla beans is not exclusive source of flavoring, (2) the amount of flavor derived from vanilla beans is less than expected and (3) the specks of vanilla are not *part* of the vanilla flavoring component – they are added separately afterwards.

69.    Curiously and surprisingly, the ingredient lists for the Natural and French Vanilla do not list vanilla specks.

70.     Vanilla specks would not be a component of the ingredients listed – milk, cream, sugar, natural flavor, vegetable gum.

71.     It is technically possible to add ingredient pieces to a natural flavor that is in the form of a liquid.

72.     However, because a flavor's purpose is to impart *taste*, it is wholly misleading to not declare the presence of vanilla specks if they were supplied to the Products via the natural flavor.

73.     A plausible explanation is that defendant decided to omit this ingredient, reasoning that it was a harmless addition, did not supply any nutritive value, and would not be noticed.

74.     The Homemade and French Vanilla contain annatto, commonly known as the food coloring used in cheddar cheese.

75.     When added to vanilla ice cream, it provides a richer yellow shade evocative of milkfat, and primarily, in butter, produced by dairy cattle in the United States.

76.     No allegation is made with respect to the how the beta-carotene is declared in the ingredient list.[15]

77.     Rather, the addition of annatto has the effect of modifying the color of the ice cream to a color closer to vanilla ice cream flavored exclusively by vanilla bean components – a darker shade like in the following stock image.



---

[15] 21 C.F.R. § 101.22(k)(3)

78.     This coloring makes the consumer less likely to question or probe into the amount and type of vanilla flavor in the Products.

VII. Conclusion

79.     The Products contain other representations which are misleading and deceptive.

80.     As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $5.99 per 48 oz (1.5 quart/1.4L) (across the product line), excluding tax – compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

81.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

82.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

83.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

84.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

85.     A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

86.     Plaintiff Derchin is a citizen of Richmond County, New York.

87.     Plaintiff Altes is a citizen of Los Angeles County, California.

88.     Plaintiff Feleppa is a citizen of Volusia County, Florida.

89.     Jane Doe plaintiffs are citizens of the 47 states for which the identity of a named

plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs.

90.    The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

91.    Defendant is a Delaware corporation with a principal place of business in Englewood (Bergen County), New Jersey.

92.    During the class period, Named Plaintiffs and Jane Doe Plaintiffs purchased one or more of the Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

93.    Named Plaintiffs and Jane Doe Plaintiffs purchased the Products based upon the representations on the packaging.

94.    Named Plaintiffs and Jane Doe Plaintiffs would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

95.    The classes will consist of all consumers in all 50 states with sub-classes for the individual states.

96.    The present complaint contains Named Plaintiffs from: New York, Florida, and California, who will represent their state sub-classes of persons who purchased any Products containing the actionable representations during the statutes of limitation.

97.    Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Named Plaintiffs and Jane Doe Plaintiffs and class members are entitled to damages.

98.    Named Plaintiffs and Jane Doe Plaintiffs' claims and the basis for relief are typical

to other members because all were subjected to the same representations.

99.    Named Plaintiffs are adequate representatives because their interests do not conflict with other members.

100.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

101.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

102.   Named Plaintiffs and Jane Doe Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

103.   Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, California Consumers<br>Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")<br>and Consumer Protection Statutes of Other States and Territories</u>

104.   Named Plaintiffs and Jane Doe Plaintiffs assert causes of action under the consumer protection statutes of the all 50 states, with Named Plaintiffs asserting the consumer protection laws of their individual states.

a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
d. California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
e. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
f. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
g. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
h. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
i. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;
j. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
k. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
l. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u. Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. New York General Business Law ("GBL") §§ 349 & 350;

dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

ee. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ff. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

hh. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

ii. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

jj. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

kk. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

ll. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

nn. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

105. Named Plaintiffs and Jane Doe Plaintiffs and class members assert causes of action under the consumer protection laws of their States, *supra*.

106. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

107.   Named Plaintiffs and Jane Doe Plaintiffs and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

108.   After mailing appropriate notice and demand California Plaintiff will have mailed and/or have amended the present complaint to request damages. Cal. Civil Code § 1782(a), (d).

109.   Defendant violated California's Unfair Competition Law ("UCL") and the Bus. & Prof. Code §§ 17200-17210, by engaging in unlawful, fraudulent, and unfair conduct.  CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9); FAL, Cal. Bus. & Prof. Code §§ § 17500, 17580-17581.

110.   California Plaintiff will seek injunctive and equitable relief for violations of the CLRA and attorney fees and costs for the California Subclass. Civ. Code § 1780(a); Cal. Bus. & Prof. Code § 17203.

111.   The representations and omissions were relied on by Named Plaintiffs and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

112.   Named Plaintiffs and Jane Doe Plaintiffs and class members incorporate by reference all preceding paragraphs.

113.   Defendant misrepresented the misrepresented the substantive, compositional, health, organoleptic and/or nutritional attributes of the Products.

114.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

115.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

116.   The representations took advantage of cognitive shortcuts made by consumers at the

point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector.

117. Named Plaintiffs and Jane Doe Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

118. Named Plaintiffs and Jane Doe Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability,</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

119. Named Plaintiffs and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

120. Defendant manufactures and sells products which contain a characterizing ingredient or flavor which is desired by consumers.

121. The Products warranted to Named Plaintiffs and Jane Doe Plaintiffs and class members that they possessed substantive, functional, nutritional, compositional, organoleptic, sensory, physical and other attributes which they did not.

122. Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

123. This duty is based, in part, on defendant's position as one of the largest users of the characterizing ingredient or flavor in the world.

124. The Products warranted to Named Plaintiffs and Jane Doe Plaintiffs and class members that the ingredient on the front label was designed to reflect and be understood as part of the product name and refer to its characterizing flavor and be derived from that food, exclusively and contained an amount sufficient to characterize the Products.

125.   Named Plaintiffs and Jane Doe Plaintiffs desired to purchase products which were as described by defendant.

126.   The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions and were not merchantable.

127.   Named Plaintiffs, Jane Doe Plaintiffs and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

128.   Named Plaintiffs and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

129.   Defendant's purpose was to sell a product which contained a valuable characterizing ingredient or flavor, and represent the Products contained sufficient independent amounts of said ingredient or flavor such that they would accurately be described as vanilla ice cream.

130.   Defendant's fraudulent intent is evinced by its very careful labeling – for example, defendant never says the three words together, "vanilla ice cream," on the labels.

131.   However, it cleverly emphasizes the vanilla component and accompanies this not by the name of the food, ice cream, as required, but by the main *ingredients* of ice cream – milk, cream, sugar.

132.   Defendant does not declare the products vanilla ice cream but that is the impression and intended result.

133.   Defendant intends that consumers view the vanilla type as the characterizing flavor yet does not include the word "flavor."

134.   Not seeing the term flavor, consumers will expect the Products to be exclusively characterized by vanilla.

135.  Defendant's intent was to secure economic advantage in the marketplace against competitors.

136.  Named Plaintiffs and Jane Doe Plaintiffs and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

137.  Named Plaintiffs and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

138.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Named Plaintiffs and Jane Doe Plaintiffs demand a jury trial on all issues.

**WHEREFORE,** plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying named plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6.   Other and further relief as the Court deems just and proper.

Dated:   June 17, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-03543
United States District Court
Eastern District of New York

Christopher Derchin, Richard Feleppa, Steve Altes, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

Unilever United States, Inc.

Defendant

## Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
  Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: June 17, 2019

/s/ Spencer Sheehan
Spencer Sheehan