United States District Court
Eastern District of New York

1:19-cv-03543-RPK-RER

Christopher Derchin, individually and on
behalf of all others similarly situated,

                    Plaintiff,

            - against -

Unilever United States, Inc.,

                    Defendant

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the First Amended Complaint

SHEEHAN & ASSOCIATES
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

REESE LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*
Attorneys for Plaintiff

## Table of Contents

Table of Authorities ................................................................................................ iv@

Introduction ........................................................................................................... 1@

Argument ............................................................................................................... 1@

I.@   Legal Standard .............................................................................................. 1@

    A.@   Factual Allegations Should Be Accepted as True ................................... 1@

    B.@   Plaintiff Has Shown that it Is Plausible a Reasonable Consumer Would
    Be Misled ........................................................................................... 2@

II.@   Plaintiff Properly Pled GBL Claims ............................................................. 2@

III.@   Plaintiff's Claims Are Not Preempted ......................................................... 3@

    A.@   Express Preemption is Not Applicable Because Defendant Would Not
    be Subject to Any Additional Requirements if Plaintiff Succeeds in this
    Action ................................................................................................. 3@

    B.@   Plaintiff's Claims are Not Subject to Implied Preemption Because New
    York has Adopted the Identical Labeling Requirements ......................... 6@

    C.@   Plaintiff Has Standing Under New York Law ........................................ 6@

IV.@   Defendant's Discovery Documents Reveal Non-Vanilla Flavors Which
Provide Vanilla Taste ..................................................................................... 7@

    A.@   The Products Contain More Artificial Vanillin than Real Vanilla Flavor
    ............................................................................................................. 7@

    B.@   The Presence of Added Vanillin is Inconsistent with Product Labeled
    "Vanilla Ice Cream" ............................................................................. 9@

    C.@   Defendant's Discovery Documents Confirm the Product Should be
    Labeled "Artificially Flavored" ........................................................... 10@

V.@   Defendant's Attempts to Speak for Reasonable Consumers Conflicts with
the Opinions of Congress, the FDA, Industry Experts and Consumers ............ 13@

    A.@   Questions of Fact Remain Which Make Disposition of Case at Motion
    to Dismiss Stage Inappropriate ............................................................ 15@

    B.@   Plaintiff's GC-MS Analysis is Intended to "Nudge" the Claims to
    "Plausible" ........................................................................................... 16@

VI.@   Plaintiff Properly Alleged Common Law Claims ............................................................. 17@

      A.@   Plaintiff Properly Pled Claim of Negligent Representation .................................. 17@

      B.@   Plaintiff Properly Pled a Claim of Fraud ............................................................ 18@

      C.@   Plaintiff Adequately Alleged Breach of Express Warranty Claims ..................... 19@

      D.@   Plaintiff's Claim of Unjust Enrichment Is Not Duplicative ................................. 20@

VII.@  Plaintiff Has Standing to Seek Injunctive Relief ............................................................ 21@

Conclusion ............................................................................................................................. 23@

## Table of Authorities

**Cases@**

*Abounader v. Strohmeyer & Arpe Co.*,
    243 N.Y. 458 (1926) ........................................................................... 6

*Aetna Cas. And Sur. V. Aniero Concrete Co., Inc.*,
    404 F.3d 566 (2d Cir. 2005)................................................................. 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................... 1, 2

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    No. 10-cv-4387, 2011 WL 2111796 (N.D. Cal. May 26, 2011)............................... 3

*Ault v. J.M. Smucker Co.*,
    No. 13-cv-3409, 2014 WL 1998235 (S.D.N.Y. 2014) ......................................... 19

*Avola v. La.-Pac. Corp.*,
    No. 11-cv-4053, 2013 WL 4647535 (E.D.N.Y. Aug. 28, 2013) ..................... 19, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................... 1, 2

*Buonasera v. Honest Co., Inc.*,
    208 F.Supp 3d 555 (S.D.N.Y. 2016)........................................................ 19

*Burton v. Iyogi, Inc.*,
    No. 13-cv-6926, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015)........................... 21

*Carias v. Monsanto Co.*,
    No. 15-cv-03677, 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016) ....................... 15

*Cohn v. Lionel Corp.*,
    289 N.Y.S.2d 404 (1968).................................................................... 21

*Cummings v. FCA US LLC*,
    401 F. Supp. 3d 288 (N.D.N.Y. 2019)...................................................... 21

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) .............................................................. 22

*Eternity Glob. Master Fund. Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004)................................................................ 18

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
    624 F.3d 106 (2d Cir. 2010)................................................................. 1

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)................................................................................ 21

*Gant v. Wallingford Bd. of Educ.*,
    69 F.3d 669 (2d Cir. 1995)....................................................................... 1

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F.Supp 3d 467 (S.D.N.Y. 2014) ........................................... 19, 20, 22

*Greene v. Gerber Products Co.*,
    262 F.Supp 3d 38 (E.D.N.Y. 2017) ................................................ 17, 18

*Hanley v. Chicago Title Ins. Co.*,
    No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ............. 1

*Henry v. Daytop Vill., Inc.*,
    42 F.3d 89 (2d Cir.1994)......................................................................... 21

*Huang v. iTV Media, Inc.*,
    13 F. Supp. 3d 246 (E.D.N.Y. 2014) ..................................................... 21

*Izquierdo v. Panera Bread Co.*,
    No. 18-cv-12127 (S.D.N.Y. Mar. 30, 2020) ......................................... 14

*J.A.O.Acquisition Corp. v. Stavitsky*,
    8 NY3d 144 (2007) ................................................................................. 17

*Jackson-Mau v. Walgreen Co.*,
    18-cv-04868, 2019 WL 5653757 (E.D.N.Y. Oct. 31, 2019) ................. 22

*Jovel v. i-Health, Inc.*,
    No. 12-cv-5614 JG, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013)....... 3, 5

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC,
    797 F.3d 160 (2d Cir. 2015)................................................................... 18

*Mandarin v. Wildenstein*,
    16 N.Y.3d 181 (2011) ............................................................................ 17

*Patane v. Nestle Waters North America, Inc.*,
    343 F. Supp. 3d 375 (D. Conn. 2018)................................................... 3, 6

*Patane v. Nestle Waters of North America, Inc.*,
    369 F. Supp. 3d 382 (D. Conn. 2019)..................................................... 3

*Paulino v. Conopco, Inc.*,
    No. 14-cv-05145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ......... 15

*People ex rel. Spitzer v. Gen. Elec. Co.*,
    756 N.Y.S.2d 520 (App. Div. 2003) ...................................................................... 2

*Quiroz v. Beaverton Foods, Inc.*,
    No. 17-cv-7348 (E.D.N.Y. 2019) ......................................................................... 14

*Ross v. Bolton*,
    904 F.2d 819 (2d Cir.1990).................................................................................... 19

*Silva v. Smucker Nat. Foods, Inc.*,
    No. 14-cv-06154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ................... 15, 16

*Sitt v. Nature's Bounty, Inc.*,
    No. 15-cv-4199, 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ......................... 15

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    No. 14-cv-03826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ....................... 15

*Verzani v. Costco Wholesale Corp.*,
    No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) ........................... 6

*Warner v. StarKist Co.*,
    2019 WL 1332573, No. 18-cv-406 (N.D.N.Y. May 25, 2019) ............................. 6

*Weisman v. LeLandais*,
    532 F.2d 308 (2d Cir. 1976)................................................................................... 1

*Williams v. Calderoni*,
    2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012) ..................................... 2

*Williams v. Schwartz*,
    529 F. App'x 89 (2d Cir. 2013)............................................................................. 2

*Winick  Realty Grp. LLC v. Austin & Assocs.*,
    857 N.Y.S.2d 114 (1st Dep't 2008) ..................................................................... 21

*Zaback v. Kellogg Sales Co.*,
    No. 3:20-cv-00268, 2020 U.S. Dist. LEXIS 109449 (S.D. Cal. June 22, 2020) ................... 16

**Statutes@**

21 U.S.C. § 341 ........................................................................................................... 3

21 U.S.C. § 343(g) ...................................................................................................... 3

21 U.S.C. § 343(i) ....................................................................................................... 5

21 U.S.C. § 343-1 ....................................................................................................... 3

21 U.S.C. § 343-1(a)(1) ............................................................................................. 3

21 U.S.C. §343(g) ...................................................................................................... 5

21 U.S.C. §343(i)(2) .................................................................................................. 5

AGM § 71-a ............................................................................................................... 4

**Rules@**

Fed. R. Civ. P.  8(e)(2) ............................................................................................. 20

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1

**Regulations@**

1 NYCRR § 250.1(a) ................................................................................................. 4

21 C.F.R. § 10.85(e) ................................................................................................ 12

21 C.F.R. § 10.85(g) ................................................................................................ 13

21 C.F.R. § 10.85(j) ................................................................................................. 13

21 C.F.R. § 101.22(h)(1) ........................................................................................... 5

21 C.F.R. § 169.175 (b)(1) ......................................................................................... 5

21 C.F.R. § 169.175(a) .............................................................................................. 8

21 C.F.R. §135.110(f)(2)(i) ........................................................................................ 9

21 C.F.R. §135.110(f)(5)(i) ....................................................................................... 10

## Introduction

Plaintiffs submit this memorandum of law in opposition to Defendant's Memorandum of Law in Opposition ("Mem.") to Plaintiff's First Amended Complaint ("FAC") (ECF No. 25).

## Argument

### I.    Legal Standard

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).

### A.    Factual Allegations Should Be Accepted as True

A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

B.      Plaintiff Has Shown that it Is Plausible a Reasonable Consumer Would Be Misled

A plaintiff needs only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff's claim to relief must be "plausible on its face," *Id.* at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557.

However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 556 U.S. at 559 129 S. Ct. at 1937. Plaintiff need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548; *Williams v. Calderoni*, 2012 U.S. Dist. LEXIS 28723, at *20 (S.D.N.Y. Mar. 1, 2012) (in evaluating a complaint under a Rule 12(b)(6) standard, the Court need not accept "implausible allegations or legal conclusions expressed as facts"), *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013).

## II.    Plaintiff Properly Pled GBL Claims

"To successfully assert a claim under either section of the GBL, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Thus, to prevail on their claims, Plaintiff need only provide proof of a deceptive act or practice and not "proof that a statement is false." *Boule v. Hutton*, 328 F.3d 84, 93 (2d Cir. 2003); *see also People ex rel. Spitzer v. Gen. Elec. Co.*, 756 N.Y.S.2d 520, 523 (App. Div. 2003) (explaining that "literal truth is not an availing defense" if the representation has the capacity "to mislead even reasonable consumers acting reasonably under the circumstances"). Additionally, there is no requirement that Plaintiff prove that Defendant's practices or acts were intentional, fraudulent, or even reckless.

### III.    Plaintiff's Claims Are Not Preempted

    A.   <u>Express Preemption is Not Applicable Because Defendant Would Not be Subject to Any Additional Requirements if Plaintiff Succeeds in this Action</u>

In 1990, Congress enacted the Nutrition Labeling and Education Act of 1990, Pub. L. No. 101–535, 104 Stat. 2353 (the "NLEA"), which added an express preemption provision to the Federal Food, Drug, and Cosmetic Act ("FDCA"). 21 U.S.C. § 343-1; *Jovel v. i-Health, Inc.*, No. 12-cv-5614 JG, 2013 WL 5437065, at *3 (E.D.N.Y. Sept. 27, 2013).

Under the express preemption provision, no state "may directly or indirectly establish . . . any requirement for a food which is the subject of a standard of identity established under [21 U.S.C. § 341] that is not identical to such standard of identity or that is not identical to the requirement of [21 U.S.C. § 343(g)]." 21 U.S.C. § 343-1(a)(1). *Patane v. Nestle Waters North America, Inc.*, 343 F. Supp. 3d 375, 384-85 (D. Conn. 2018) (*Patane I*).

"The purpose of the NLEA . . . is not to preclude all state regulation of nutritional labeling, but to 'prevent State and local governments from adopting *inconsistent* requirements with respect to the labeling of nutrients.'" *Astiana v. Ben & Jerry's Homemade, Inc.*, 10-cv-4387, 2011 WL 2111796, at *8 (N.D. Cal. May 26, 2011) (emphasis added) (quoting H.R. Rep. No. 101–538, at 10 (1990)).

Defendant cites to *Patane I* and *Patane v. Nestle Waters of North America, Inc.*, 369 F. Supp. 3d 382 (D. Conn. 2019) (*Patane II*), concluding that plaintiffs were "ultimately allowed to proceed in New York . . . because New York has a limited law defining 'spring water' as part of the Sanitary Code, and does so consistently with the FDCA." Mem. at 8.

Defendant acknowledges "[a]n exception to FDCA preemption exists if a state has enacted food regulations that impose identical standards as those of the FDCA." Mem. at 7. Defendant

cites California's "broad mini-FDCAs" and contends New York "has not enacted a comprehensive food law." *Id*.

However, New York has adopted and incorporated all federal food labeling regulations including standards of identity. These are located within Title 1 ("Agriculture and Markets Law") of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR"); Part 250, "Definitions and Standards." *See* 1 NYCRR § 250.1(a)(17) (incorporating federal standards of identity for foods including vanilla products at "21 CFR part 169, containing the Federal definitions and standards for *Food Dressings and Flavorings* at pages 600-606.").

Standards for dairy products are in Part 17 (of 18), "Requirements for the Labeling of, and Definitions and Standards of Identity for, Milk, Milk Products and Frozen Desserts," Chapter I, Milk Control, Subchapter A, Dairy Products. Part 17 contains thirty-two (32) sections, seven repealed and five renumbered. The section addressing "vanilla ice cream" is under "Additional standards of identity for frozen desserts," which states:

> The standards of identity for ice cream and frozen custard, goat's milk ice cream, ice milk, goat's milk ice milk, mellorine, sherbet, and water ices as set forth in sections 135.110, 135.115, 135.120, 135.125, 135.130, 135.140 and 135.160, respectively, of title 21 of the Code of Federal Regulations (revised as of April 1, 2010) are *adopted and incorporated by reference* herein.

1 NYCRR § 17.19.

Not only is there no difference between federal and state law, New York Agriculture and Markets Law ("AGM") § 71-a ("Declaration of policy") goes further:

4

It is further declared to be in the interest of the dairy industry and of the consuming public that there be *uniformity of standards for frozen desserts as between the various states and the federal government* to the end that there may be free movement of frozen desserts between the states and to the end that the inefficiency, needless expense, and confusion caused by differences in products sold under the same name, and *differences in labeling of identical products may be eliminated*.

(emphasis added).

Second, defendant has not argued that *if* these sections were invoked in the FAC, Plaintiff would adequately state a claim.

Defendant's argument about the listing of "vanilla extract" or "natural flavor" for an exclusively vanilla ingredient is interesting but not relevant to the claim of whether the Product contains flavors other than vanilla.[1]

Plaintiff's claims are brought pursuant to New York consumer protection law alleging Defendant's Product labeling is inconsistent with federal regulations and their identical state-level counterparts, the NLEA does not expressly preempt the state law claim. *Jovel*, 2013 WL 5437065, at *3 (NLEA preemption clause "has been repeatedly interpreted not to preempt requirements imposed by state law that effectively parallel or mirror the relevant sections of the NLEA").

---

[1] Defendant asserts a challenge to the ingredient name is expressly preempted because "Plaintiff . . . is seeking to impose additional requirements, beyond and inconsistent with regulatory provisions such as 21 C.F.R. § 101.22(h)(1)." Mem. at 12, 16 ("[L]isting 'natural flavor' in the ingredient statement is consistent with a product flavored exclusively by vanilla bean extract" citing 21 U.S.C. § 343(i)(2)). Defendant's citation of 21 U.S.C. §343(i)(2) is inapposite because this section addresses foods "where no representation as to definition and standard of identity" is made. The labeling and designation of vanilla is controlled by 21 U.S.C. §343(g), which requires that a standardized food "bear[s] the name of the food specified in the definition and standard."); *See* 21 C.F.R. § 101.4(a)(1) (requiring ingredients to be listed under common or usual name); FAC ¶ 77; The common or usual name for the exclusively vanilla ingredients are "vanilla extract" and "vanilla flavoring." See 21 C.F.R. § 169.175 (b)(1) ("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'"); 21 C.F.R. § 169.177 (b) ("The specified name of the food is 'Vanilla flavoring'."). The common or usual name for defendant's flavor ingredient that contains vanilla and non-vanilla flavors is "Natural Flavor." See 21 C.F.R. § 101.4(b)(1) ("Spices, flavorings, colorings and chemical preservatives shall be declared according to the provisions of 101.22."); see also 21 C.F.R. § 101.22(h)(1) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way…Spice, natural flavor, and artificial flavor may be declared as 'spice', 'natural flavor', or 'artificial flavor'"). An exclusively vanilla ingredient is not designated on an ingredient list as "natural flavor" because if it were, the result would be conflict between 21 U.S.C. §343(g) and 21 U.S.C. § 343(i), and it must be presumed Congress was aware of this issue.

Defendant relies upon *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) for the proposition that Plaintiff's claims here are preempted because the "FDCA lacks a private right of action and therefore [plaintiff] cannot rely on it for the purposes of asserting a state law consumer claim under G.B.L. § 349."

This misconstrues Plaintiff's argument. Because New York has adopted the federal labeling regulations, Plaintiff asserts a state claim under G.B.L. §§ 349 and 350, premised upon labeling regulations incorporated by New York. Defendant's conduct is deceptive and misleading and would be regardless of the existence of any labeling regime.

B.   Plaintiff's Claims are Not Subject to Implied Preemption Because New York has Adopted the Identical Labeling Requirements

To survive implied preemption, "a state law claim must rely on an independent state law duty that parallels or mirrors" the duty required by the FDCA. *Patane I*, 343 F. Supp. 3d at 386; 21 U.S.C. § 337(a). Since New York has incorporated all of the FDCA into its state law, Plaintiff's claims are not subject to implied preemption since this action doe not "solely and exclusively rely on violations of the FDCA's own requirements." *Id*.

C.   Plaintiff Has Standing Under New York Law

Defendant next avails itself of the argument that New York does not confer a private right of action to Plaintiff to bring suit in this case. Mem. at 9-10. This is false, but not particularly relevant since this action is brought under this State's consumer protection statutes.

New York's Agriculture and Markets Law confers a right of action upon an ultimate purchaser against the person who originally prepared for market and sold the containers with false labels or statements of their contents. *See Warner v. StarKist Co.*, 2019 WL 1332573, No. 18-cv-406 (N.D.N.Y. May 25, 2019) (quoting *Abounader v. Strohmeyer & Arpe Co.*, 243 N.Y. 458, 463 (1926)).

IV.   **Defendant's Discovery Documents Reveal Non-Vanilla Flavors Which Provide Vanilla Taste**

Defendant claims the Product "is exactly what Plaintiff claims it is represented as being." Mem. at 19. This assertion is undermined by Defendant's own documents.

A.   The Products Contain More Artificial Vanillin than Real Vanilla Flavor

Defendant's claim that "vanilla bean extract mak[es] up almost all ███████ of the portion of the component that furnishes flavor" is incorrect and based on errors in interpreting ██

███████████████



Noting the range of vanilla extract between ███████ defendant claims "there would be over ███ times as much vanilla extract as vanillin, or any of the other natural flavors, in the flavor package, and ███ times as much vanilla extract as all other flavors combined." Mem. at 19-20.

---

[2] UNILEVER DER0000031-32.

This fails to recognize that vanilla extract "is the *solution in aqueous ethyl alcohol* of the sapid and odorous principles extractable from vanilla beans." 21 C.F.R. § 169.175(a) (emphasis added). The main components of vanilla extract consist of "water, alcohol and vanilla bean extractives."[3]

Vanillin – the principal flavoring component of vanilla – is present "at levels ranging from 0.2 g per 100mL (0.2%) for a good quality extract to less than 0.02 g per 100mL (0.02%) for inferior quality product," including "one-fold" varieties, used by defendant.[4]

Defendant's calculation claiming the amount of vanilla extract being ██████ times greater than the amount of vanillin and other flavors – disregards that vanilla extract contains at most 0.02% vanillin content, because it uses a one-fold vanilla extract.

This information is confirmed ████████████████████████



By defendant's own admissions, the non-vanilla flavor components are ███████████ greater than the amount of vanilla bean extractives, (excluding water and alcohol) because vanilla bean extractives include "sugars, non-sugar carbohydrates, amino acids and proteins," in addition to flavoring compounds.[6]

---

[3] Bakto Flavors, https://www.baktoflavors.com/how-to-buy-vanilla-extract
[4] Arvind S. Ranadive, Quality control of vanilla beans and extracts (pp. 141-161) in Handbook of Vanilla Science and Technology, Havkin-Frenkel, Daphna, and Faith C. Belanger, eds., Hoboken, NJ, Blackwell Publishing, 2011.
████████████████
[6] *Id*, At 154 ("Typical single-fold vanilla extract made without any additives has soluble solids content of about 1.8 to 2.2% on the weight basis.")

Defendant next claims that the "entire flavor package makes up ███████ of the ice cream." Mem. at 20. In defendant's "5,000 gallon dairy tanker" with ████████████ the total amount of vanillin would only be █████████████████████ This is less than what defendant now concedes is ████████████████████ of vanillin," or ██████████ added vanillin.[7]

Defendant's claim that "it is no exaggeration at all to say that the vanilla taste of Breyers Natural Vanilla Ice Cream is supplied entirely by vanilla extract" is false and the allegations of the FAC that the Product derives de minimis flavor from vanilla is accurate. Mem. at 20.

B.   The Presence of Added Vanillin is Inconsistent with Product Labeled "Vanilla Ice Cream"

Defendant's product manager admits that "vanillin is sometime used to extend or characterize vanilla flavor," though it "is used for other flavoring purposes as well, and its use in this product is consistent only with such other uses." Decl. at ¶ 12.

Defendant asks this Court to ignore common sense by accepting its argument that vanillin – the main component of vanilla – is not used in vanilla ice cream for added vanilla taste. FAC ¶ 31 ("including vanillin, which simulates vanilla taste"); ¶ 113 ("Non-vanilla vanillin is typically added to flavors containing a drop of real vanilla to "fortify" or "spike" a vanilla taste.").

Regardless of the explanation, vanillin from non-vanilla sources is an artificial flavor. FAC ¶ 66 citing Exhibit A, Quinn Letter, May 31, 1979 ("the designation of a characterizing flavor for category I ice cream is based on the premise that only natural flavor derived from the product whose flavor is simulated may be used."). This means the Product is not a "Category 1" ice cream. 21 C.F.R. §135.110(f)(2)(i) ("no artificial flavor"); FAC ¶ 73 citing Exhibit D, Advisory Opinion, Hile to FEMA, February 9, 1983 ("21 C.F.R. § 135.110(f) 'makes no provision for any natural flavors other than natural characterizing flavors.'").

---

[7] https://www.thespruceeats.com/how-to-measure-481257

Where vanilla ice cream contains added vanillin, it becomes misleading to label it "vanilla ice cream" because vanillin has always been considered artificial when compared with real vanilla. FAC ¶ 90; *see also* Exhibit C, Letter from Summers to Daugherty, Zink & Triest Company, Inc. April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to the category I ice cream requirements and, therefore, must contain only the characterizing flavor from vanilla beans).

The FAC quotes Carol McBride, ███████████████████████████ who states clearly: "If the flavor comes partially or fully from another source, the company must stamp 'vanilla flavored' or 'artificial vanilla' on the front of the package, a likely turnoff to consumers." FAC ¶ 55.[8]

Defendant's use of vanillin *with* vanilla requires the Product be labeled "artificially flavored" to alert consumers to the quality of the product they will be purchasing. *See Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287-88 (S.D.N.Y. 2014) (distinguishing *Verzani* where a reasonable consumer might focus on the most prominent portion of a product label that is potentially deceptive to a reasonable consumer).

C. <u>Defendant's Discovery Documents Confirm the Product Should be Labeled "Artificially Flavored"</u>

Based on the calculations of vanillin to vanilla used, "the amount of vanillin used is greater than 1 ounce per unit of vanilla constituent," which means the "artificial flavor simulating the characterizing flavor shall be deemed to predominate." FAC ¶ 68 citing 21 C.F.R. §135.110(f)(5)(i) and Exhibit B, Letter, R.E. Newberry to Daniel P. Thompson, October 30, 1979 (describing such a product as "category III and have to be labeled as 'artificial vanilla.'").

---

█ ████████████████████████████████████

Assuming the Product contains 1 oz of vanillin per unit of vanilla constituent, it could not be called "vanilla flavored ice cream" because it contains "flavor from a non-vanilla source that simulates vanilla." Exhibit D, Advisory Opinion, Hile to Industry Members, February 9, 1983.

The effect of these "secondary" flavorings is that the Product contains more added natural flavors than vanilla bean extractives. Unilever Discovery Documents, UNILEVER_DER0000018

████████████████████████████████████████████████████████████

Defendant attempts to explain away these added flavors by claiming, "Plaintiff fails to acknowledge that a product labeled 'natural vanilla' ice cream may also contain secondary, non-vanilla flavor notes." Mem. at 16.

According to flavor supplier Symrise, the ██████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Defendant refers to the non-vanilla ("WONF") flavors as "secondary, non-vanilla flavor notes." Contrary to defendant's claims, all the non-vanilla flavors are used to create flavor notes provided by vanilla. ██████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

11



These non-vanilla flavors all simulate, extend and enhance the vanilla flavor, allowing Defendant to use *less vanilla* to achieve the intended taste. FAC ¶ 46; *See Izquierdo v. Panera Bread Co.*, No. 18-cv-12127 (S.D.N.Y. Mar. 30, 2020).

Defendant describes its replacement of real vanilla by vanillin and "secondary flavors" as owing to "increased sophistication over the decades." Mem. at 3. No longer are foods flavored "just with a few simple ingredients, but with carefully formulated packages of extracts and other flavors." *Id.*

Without support, defendant claims "changes in regulatory practices and enforcement priorities" renders the FDA Advisory Opinions and memoranda incorporated into the FAC "outdated." Mem. at 3, fn 1. These documents "represent[s] the formal position of FDA on a matter." 21 C.F.R. § 10.85(e). Defendant fails to submit evidence showing these opinions have

---

[12] Ariel Fenster, "The New Meaning of Natural Vanilla Flavor," March 20, 2017.



[18] Melody M. Bomgardner, The problem with vanilla, Chemical & Engineering News, Vol. 94 (36), pp. 38-42, September 12, 2016.Simran Sethi, The Bittersweet Story of Vanilla, SmithsonianMag.com, April 3, 2017;

been "amended or revoked," which means they "may be used in administrative or court proceedings to illustrate acceptable and unacceptable procedures or standards." 21 C.F.R. § 10.85(g); 21 C.F.R. § 10.85(j).

Defendant argues it is implausible and without a "basis in law, regulation, modern food formulation techniques, or common sense" "that a product labeled as "vanilla ice cream" "must be exclusively flavored with vanilla extract." Mem. at 14, 16.

Yet the FAC provides significant support for this position. FAC ¶ 68 citing Exhibit B, Letter from R.E. Newberry, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods, to Daniel P. Thompson, October 30, 1979 ("Newberry Letter, October 30, 1979") (a non-vanilla flavor "is deemed to simulate [resemble or reinforce] vanilla if the addition of the non-vanilla flavor results in a reduction in the amount of vanilla bean derived flavor that would otherwise be used in a vanilla flavored ice cream").

The non-vanilla flavors provide flavor notes typically associated with vanilla, allowing the Product to use less real vanilla. FAC ¶ 68, Exhibit B, Letter from Newberry to Thompson, October 30, 1979 ("[N]on vanilla flavor is deemed to simulate vanilla if the addition of the non-vanilla flavor results in a reduction in the amount of vanilla bean derived flavor that would otherwise be used in a vanilla flavored ice cream.").

## V.  Defendant's Attempts to Speak for Reasonable Consumers Conflicts with the Opinions of Congress, the FDA, Industry Experts and Consumers

According to defendant, the FAC's "technical" allegations are irrelevant to a "reasonable consumer." Mem. at 1 ("A reasonable consumer would not perceive the misleading messages alleged by Plaintiffs to be communicated about the products, and the remedies suggested by Plaintiffs would make no difference in a reasonable consumer's interpretation of the packaging.").

13

This stance ignores the FAC's allegations citing precedent and industry guidance on an issue where preventing consumer deception was the Agency's purpose. Defendant's labeling is misleading not because of a "per se" violation, but because "vanilla," without qualification, gives consumers the impression that more vanilla was used than is present. *See Izquierdo v. Panera Bread Co.*, No. 18-cv-12127 (S.D.N.Y. Mar. 30, 2020) ("It is materially misleading to suggest a product contains a greater proportion of a preferred ingredient than it actually does, even where there is a visible ingredients list that states the correct composition of the food.").

What defendant considers a "technical violation" based on FDA regulations is inconsistent with the decision in *Quiroz v. Beaverton Foods, Inc.*, No. 17-cv-7348 (E.D.N.Y. 2019). In that case, the plaintiff contended that the defendant's mustard, marketed as containing "no preservatives," contained citric acid. Though plaintiff relied on the regulatory definition of a preservative, the court agreed that the claim was "not premised on a violation of federal labeling requirements" but instead "based on the contention that the label 'no preservatives' is misleading because the product does in fact contain preservatives." *Id*.

The regulations relied upon by Plaintiff are the best touchstone available to define deceptive behavior. Labeling the Product "vanilla ice cream" when it contains artificial vanilla flavors is an inherently deceptive act that would be deceptive "regardless of the existence of the FDCA and its implementing regulations." *Id*.

To address this issue, Defendant brings in the laws of other states and asserts, "[C]ourts have held that a plaintiff must not only plead actual deception, but specific reliance – not just reliance on the product being labeled lawfully, but reliance on the actual misleading message allegedly communicated by the label." Mem. at 15.

14

Though plaintiff alleged reliance, New York does not require a plaintiff to prove they relied on a defendant's deceptive practices. FAC ¶ 161; *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744–45; *see also Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 655 (S.D.N.Y. 1983). Even if they did, Plaintiff here alleges that he relied upon Defendant's representations. FAC ¶ 161.

A.   Questions of Fact Remain Which Make Disposition of Case at Motion to Dismiss Stage Inappropriate

Whether a reasonable consumer would be misled is usually a question of fact, and courts are reluctant to dismiss such claims on a motion to dismiss. *See, e.g.*, *Carias v. Monsanto Co.*, No. 15-cv-03677, 2016 WL 6803780, at *9 (E.D.N.Y. Sept. 30, 2016) ("[T]he instant litigation may very well turn on discrete factual questions"); *Sitt v. Nature's Bounty, Inc.*, No. 15-cv-4199, 2016 WL 5372794, at *8 (E.D.N.Y. Sept. 26, 2016) ("Usually the reasonable consumer determination is a question of fact") (citations omitted) (quotations omitted); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-03826, 2015 WL 5579872, at *4, *13–23 (E.D.N.Y. Sept. 22, 2015) (declining to dismiss complaint, noting "A federal trial judge, with a background and experience unlike that of most consumers is hardly in a position to declare that reasonable consumers would not be misled" (citations omitted) (quotations omitted); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-06154, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) (""What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss."); *Paulino v. Conopco, Inc.*, No. 14-cv-05145, 2015 WL 4895234, at *1, *5–6 (E.D.N.Y. Aug. 17, 2015) ("A reasonable juror could reach the conclusion that the label 'Naturals' means that the product is at least mostly comprised of natural ingredients"); *Ackerman*, 2010 WL 2925955at *6, *22–23 (court cannot conclude that a reasonable consumer would not be misled as a matter of law).

Here, Defendant makes conclusory statements about what a reasonable consumer will believe. Mem. at 1 ("[T]he remedies suggested by Plaintiffs would make no difference in a reasonable consumer's interpretation of the packaging"); Mem. at 4 ("[I]t is implausible that reasonable consumers perceive any, let alone all, of these meanings from the mere designation of a product as 'vanilla ice cream'"); Mem. at 15 ("There is no basis to allege that consumers receive any of Plaintiffs' alleged ingredient claims from the Product's packaging.")

These are all statements in which Defendant's counsel seeks to speak for reasonable consumers. "What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss." *Silva*, at *10.

B.    Plaintiff's GC-MS Analysis is Intended to "Nudge" the Claims to "Plausible"

Defendant claims "Plaintiff's Chromatography Analysis Is Worthless" because it lacked a "control" and the volatiles may be too small to detect. Mem. at 17. The "control" would be an ice cream sample without flavors added to it, which defendant has refused to provide. For the vanilla compounds, they are not extracted manually but through gas, which obviates the need to be as "careful" as defendant claims is necessary.

Nevertheless, defendant has provided a partial flavor formula (albeit with large ranges), which corroborates the lab testing. In contrast to *Zaback v. Kellogg Sales Co.*, No. 3:20-cv-00268, 2020 U.S. Dist. LEXIS 109449 (S.D. Cal. June 22, 2020), where the plaintiff's sole allegations in consisted of (1) "a close inspection of the ingredient list and (2) the absence of the term "vanilla extract," the court dismissed the complaint with leave to amend. *Zaback* at *6 (internal quotations omitted). *Zaback*'s allegations were too speculative and scant to state a claim, in contrast to the FAC's allegations. At the time the FAC was filed, defendant had not even provided its flavor formula, which admits the presence of artificial vanilla flavor and confirms the FAC's allegations. FAC ¶ 92-116.

VI.     **Plaintiff Properly Alleged Common Law Claims**

    A.     <u>Plaintiff Properly Pled Claim of Negligent Representation</u>

In New York, "It is well settled that a claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information. *Mandarin v. Wildenstein*, 16 N.Y.3d 181, 173 (2011) (citing *J.A.O.Acquisition Corp. v. Stavitsky*, 8 NY3d 144, 148 (2007) (internal quotations omitted).

    Defendant claims Plaintiff cannot plead negligent misrepresentation because there existed no special relationship and no misrepresentation. These assertions disregard facts asserted in the complaint as well as established law in New York State.

    A special relationship sufficient to establish a claim of negligent representation existed between plaintiff and defendant. A relationship is considered to approach that of privity if: "(1) the defendant makes a statement with the awareness that the statement was to be used for a particular purpose; (2) a known party or parties rely on this statement in furtherance of that purpose; and (3) there is some conduct by the defendant linking it to the party or parties and evincing [the] defendant's understanding of their reliance." *Greene v. Gerber Products Co.*, 262 F.Supp 3d 38, 75 (E.D.N.Y. 2017) (citing *Aetna Cas. And Sur. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 584 (2d Cir. 2005)).

    As to negligent misrepresentation, "because casual statements and contacts are prevalent in business, liability in the commercial context is imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the

17

injured party such that reliance on the negligent misrepresentation is justified." *Greene* F.Supp 3d at 75 (internal quotation marks omitted) (citing *Eternity Glob. Master Fund. Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004). Where a plaintiff fails to allege the existence of a special relationship, negligent misrepresentation is still properly pled where the plaintiff "emphatically" alleges (1) the person making the representation held or appeared to hold unique or special expertise and (2) the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Id.* at 75 (citing *Eternity Glob.*, 375 F.3d at 188).

Here, first, Plaintiff adequately alleges that Defendant held a unique or special expertise. FAC ¶ 210. Second, it defies logic that Defendant was not aware that consumers would rely upon the representations put on the front label of its ice cream products.

### B.   Plaintiff Properly Pled a Claim of Fraud

Defendant argues that Plaintiff's fraud allegations fail to be plead with the required specificity pursuant to Fed. R. Civ. P. 9(b). Mem. at 23-24. To satisfy Rule 9(b), "the complaint must: (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 171 (2d Cir. 2015). (internal quotation omitted). "Rule 9(b) requires only that Plaintiffs plead, with particularity, facts from which it is plausible to infer fraud; it does not require Plaintiffs to plead facts that make fraud more probable than other explanations." *Id.* at 175.

Plaintiff identified Defendant as the speaker of the representations. FAC ¶ 222. Plaintiff alleges Defendant made numerous fraudulent statements indicating that "the Products contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products." *Id.*

18

Plaintiff alleges Defendant made the misleading representations on the front label of their vanilla ice cream. FAC ¶ 1-4.

Finally, Plaintiff explains Defendant's labeling of their ice cream is fraudulent because "vanilla ice cream" means that "only natural flavor derived from the product whose flavor is simulated may be used." Exhibit A, Quinn Letter, May 31, 1979; FAC ¶ 171.

The allegations in the Complaint thus meet the "primary purpose of Rule 9(b)" which "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

C.   Plaintiff Adequately Alleged Breach of Express Warranty Claims

"To state a claim for breach of an express warranty, "a plaintiff must allege an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon the plaintiff's detriment" *Buonasera v. Honest Co., Inc.*, 208 F.Supp 3d 555, 567 (S.D.N.Y. 2016) (internal quotations omitted) (citing *Ault v. J.M. Smucker Co.*, No. 13-cv-3409, 2014 WL 1998235, at *6 (S.D.N.Y. 2014). Specifically, to state a claim for breach of an express warranty under New York Law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach. *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F.Supp 3d 467, 482 (S.D.N.Y. 2014) (citing *Avola v. La.-Pac.* Corp., No. 11-cv-4053, 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013). Further, "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." *Ault*, 2014 WL 1998235, at *6.

Here, Defendant contends there was no express warranty. Mem. at 22 ("Express warranties must be founded on express representations – that is a literal affirmation of fact or promise about the specific thing Plaintiff alleges to be untrue").

Plaintiff alleges that (1) Defendant expressly warranted that their vanilla ice cream had properties that it didn't, i.e. containing exclusively vanilla extract to flavor the ice cream; (2) Defendant's breached the express warranty on the label of, and/or in the advertising of their vanilla ice cream; (3) Defendant made such express warranty knowing the purpose for which its "vanilla ice cream" was to be used and advocating its use for such purpose; (4) Defendant's claims as to their vanilla ice cream did not conform to the express warranty made by Defendant and (5) Plaintiff purchased the vanilla ice cream based up these representations. FAC ¶¶ 213-220.

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." *Goldemberg v. Johnson & Johnson Consumer Comp.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (quoting *Avola v. La.-Pac. Corp.*, No. 11-cv-4053, 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013). In *Goldemberg*, the court held that the defendant's motion to dismiss the claims for breach of express warranty must be denied where defendant advertised on their labels and marketing materials that their products were "Active Naturals" when the products contained mostly synthetic ingredients. *Id*. at 482-83. Compare to here where Defendant represents that its ice cream is flavored exclusively with vanilla, a representation which induced Plaintiff into purchasing Defendant's products.

D.   Plaintiff's Claim of Unjust Enrichment Is Not Duplicative

Defendant argues that the Court should dismiss Plaintiff's unjust enrichment claim because it is duplicative. Mem. at 24. However, "[u]nder Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count,

20

regardless of consistency." *Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir.1994). To the extent that this Court finds that Plaintiff does not state claims pursuant to the GBL, fraud, negligent representation or breach of express warranty, the Court could hold that Plaintiff's unjust enrichment claim is viable. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 316-17 (N.D.N.Y. 2019). ("Plaintiff's claim for unjust enrichment arises outside of the scope of the Limited Warranty and is consequently not barred."). Thus, because questions of fact remain as to all of Plaintiff's claims, dismissal of Plaintiff's unjust enrichment claim at this stage is premature. *Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014) (declining to dismiss unjust enrichment claim as duplicative at motion to dismiss stage); *Burton v. Iyogi, Inc.*, No. 13-cv-6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (denying motion to dismiss New York unjust enrichment claim and stating that "it is well-settled that parties may plead in the alternative"); *Cohn v. Lionel Corp.,* 289 N.Y.S.2d 404, 408 (1968) ("Undeniably, a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery."); *Winick Realty Grp. LLC v. Austin & Assocs.,* 857 N.Y.S.2d 114, 115 (1st Dep't 2008) ("[S]ince plaintiff is entitled to plead inconsistent causes of action in the alternative, the quasi-contractual claims are not precluded by the pleading of a cause of action for breach of an oral agreement.").

## VII.    Plaintiff Has Standing to Seek Injunctive Relief

Plaintiff has standing to pursue injunctive relief because Plaintiff's inability to rely on the Products' labels in the future, which causes him to avoid purchasing the Products even though he would like to if they could trust the labels, constitutes an imminent threat of future harm sufficient to satisfy Article III's injury in fact requirement. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–85 (2000). Here Plaintiff contends that he would not have bought the Products or would have paid less for them. FAC ¶ 145. This gives rise to the supposition that Plaintiff cannot rely on Defendant's labels to convey accurate and truthful information.

Recently in *Jackson-Mau v. Walgreen Co.*, 18-cv-04868, 2019 WL 5653757 (E.D.N.Y. Oct. 31, 2019), the court found that the plaintiff could seek injunctive relief because her complaint stated she would purchase the product "again if she could be sure that the bottle actually contains what it is supposed to contain." *Jackson-Mau*, 2019 WL 5653757, at *3; *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) (holding that the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm").

Similarly, in *Davidson v. Kimberly-Clark Corp.*, the United States Court of Appeals for the Ninth Circuit held as follows:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) (footnote omitted) (citation omitted).

Furthermore, many courts have concluded that the inability to rely on the labels in the future, as alleged in the FAC, constitutes a threat of harm and that to hold otherwise would eviscerate the New York consumer protection statute. *See, e.g.*, *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("Federal courts 'have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer,' because to 'hold otherwise would effectively bar any consumer who

avoids the offending product from seeking injunctive relief.'" (quoting *Ackerman* at *2–3, *14–15, *15 n.23 (E.D.N.Y. July 18, 2013)).

For all the foregoing reasons, Plaintiff has standing to seek injunctive relief.

## Conclusion

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety or in the alternative, grant leave to amend or dismiss without prejudice.

Date:   June 29, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Tel: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

1:19-cv-03543-RPK-RER
United States District Court
Eastern District of New York

Christopher Derchin, individually and on behalf of all others similarly situated,

        Plaintiff,

    -against-

Unilever United States, Inc.,

        Defendant

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the First Amended Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Date:   June 29, 2020

                             /s/Spencer Sheehan         
                             Spencer Sheehan

**Certificate of Service**

I certify that on June 29, 2020, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

   /s/ Spencer Sheehan